IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RAMONE WILLIE GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-192 |
| | ) | |
| HAROLD SIMPSON, Correctional Officer I; | ) | |
| JULIAN GREENAWAY, CERT Officer; | ) | |
| RODGERICK NABORS, CERT Officer; | ) | |
| JUSTIN WASHINGTON, CERT Officer; | ) | |
| ANTONIO BINNS, CERT Officer; | ) | |
| LENON BUTLER, CERT Officer; | ) | |
| CLIFFORD BROWN, Correctional Officer I; | ) | |
| DEVON PERRY, Correctional Officer; | ) | |
| JOHN WILLIAMS, Blue Uniform Sgt.; | ) | |
| and, JERRY L. BEARD, Captain, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Plaintiff, an inmate at Hancock State Prison in Sparta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. no. 64.)

## I.     PROCEDURAL BACKGROUND

Because Plaintiff is proceeding _in forma pauperis_, the Court screened the original complaint and directed service of process on Defendants based on claims of excessive force and deliberate indifference to a serious medical need. (See doc. no. 10.) Plaintiff filed an

amended complaint, and the Court screened out all medical deliberate indifference claims but for the one against Defendant Lenon Butler. (See doc. nos. 38, 47.) The case proceeded against all Defendants based on Plaintiff's allegations of excessive force. (See doc. no. 37.)

The case had an extended discovery period, during which Defendants told Plaintiff at his deposition that no video of the events in question existed. (See doc. no. 54; doc. no. 64, Ex. A, Pl.'s Dep.) Defendants then located and produced relevant video footage in mid-September of last year. (Doc. no. 57.) The Court permitted Plaintiff to conduct additional discovery based on the late disclosure and extended the summary judgment deadline. (Doc. nos. 58, 63.)

Because Plaintiff did not respond to Defendants' motion for summary judgment, it is deemed unopposed. Loc. R. 7.5. The Court likewise deems admitted all portions of Defendants' Statement of Undisputed Material Facts that have evidentiary support in the record. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000). However, this does not automatically entitle Defendants to summary judgment because as movants, they continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record, including Plaintiff's sworn deposition testimony, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II.    FACTS

On October 24, 2013, Plaintiff was incarcerated at ASMP.  (Doc. no. 35, p. 5.)  On that day, ASMP employed Defendants in the following capacities:  (1) Harold Simpson, Correctional Officer I; (2) Julian Greenaway, Corrections Emergency Response Team ("CERT") Officer; (3) Rodgerick Nabors, CERT Officer; (4) Justin Washington, CERT Officer; (5) Antonio Binns, CERT Officer; (6) Lenon Butler, CERT Officer; (7) Clifford Brown, Correctional Officer I; (8) Devon Perry, Correctional Officer I; (9) John Williams, Sergeant on CERT team; and (10) Jerry L. Beard, CERT Captain.  (See id. at 1, 4; doc. no. 64-4, Simpson Aff. ¶ 2; doc. no. 64-5, Perry Aff. ¶ 2; doc. no. 64-8, Williams Aff. ¶ 2; doc. no. 64-9, Greenaway Aff. ¶ 2; doc. no. 64-10, Beard Aff. ¶ 2; doc. no. 64-11, Nabors Aff. ¶ 2.)[1]

At approximately 11:55 a.m. that day, Defendants Simpson and Perry attempted to escort Plaintiff from Building 14 to lockdown in Building 12 because of a report from the control room officer to the Unit Manager of 14A and 14B that Plaintiff was exposing himself and masturbating in front of her.  (Doc. no. 64-6, McDowell Aff. ¶¶ 2, 3; doc. no. 64-13, Lawson Aff. ¶¶ 2-4.)  Trouble began when Defendant Simpson cuffed Plaintiff's first hand and Plaintiff complained the cuff was too tight and resisted cuffing his second hand.  (Pl.'s Dep. 28-29; Simpson Aff. ¶¶ 6-8; Perry Aff. ¶¶ 6-7; McDowell Aff. ¶¶ 6-9.)  The control room officer broadcast over the prison system a code for CERT team assistance.  (McDowell Aff. ¶ 10; Beard Aff. ¶ 3; Nabors Aff. ¶ 3; Lawson Aff. ¶6-7.)

---

[1] The Affidavit of Lenon Butler, (doc. no. 64-12), was not signed, dated, or notarized, and therefore is of no evidentiary value for the summary judgment analysis.  The Affidavit of Rodgerick Nabors, (doc. no. 64-11), clarifies the first name of Defendant Nabors is "Rodgerick," not "Antoine."  Therefore, the Court **DIRECTS** the **CLERK** to update the caption in accordance with the caption of this Report and Recommendation.

Once the CERT team arrived, they were able to get both of Plaintiff's hands cuffed behind his back. (Pl.'s Dep. 33, 36; Simpson Aff. ¶ 11; Perry Aff. ¶ 9; Williams Aff. ¶¶ 3-4; Greenaway Aff. ¶¶ 3-4; Nabors Aff. ¶¶ 4-5.) Plaintiff was then escorted to the medical department, where it was discovered his right eardrum was perforated. (Williams Aff. ¶ 5; Nabors Aff. ¶ 5; Greenaway Aff. ¶¶ 5-6; Beard Aff. ¶ 7; doc. no. 64-3, Med. Rec. 101, 135.) While this general outline is undisputed, the contested details are important.

### A.     Plaintiff's Version of Events

Plaintiff asserts Defendant Perry intentionally cuffed his first wrist too tightly, cutting it and causing it to swell. (Pl.'s Dep. 28-29; doc. no. 35, p. 5.) Plaintiff immediately demanded the cuff be loosened and snatched his hand away, but Defendant Perry did not have the key to unlock the cuff. (Id. at 29.) Defendant Simpson grabbed Plaintiff's second hand to place it behind Plaintiff's back, but he could not do so because Plaintiff resisted, and Defendant Simpson thus hit Plaintiff several times "with a closed fist" on the right side of his head. (Id. at 29-30; doc. no. 35, p. 5.) Defendant Perry put Plaintiff in a chokehold, and Defendant Simpson tried to run away after punching Plaintiff, but Plaintiff grabbed him while Defendant Perry maintained the chokehold. (Pl.'s Dep. 31.)

Defendant Simpson started punching Plaintiff in the chest area, and Defendant Perry did not ease up on the chokehold until the CERT team arrived, at which point Plaintiff quit struggling and turned around to allow himself to be handcuffed behind his back. (Id. at 31-33.) Fifteen to twenty officers arrived, including Defendants Brown, Williams, Binns, Washington, Butler, Nabors, and Greenaway. (Id. at 35-38.) They punched, grabbed, and threw Plaintiff through a doorway into the hallway even though Plaintiff was handcuffed. (Id. at 33, 39-40; doc. no. 35, p. 5.) Defendant Greenaway continued to punch Plaintiff while

he was on the ground, after which Defendants Greenaway, Nabors, Binns, Washington, and Butler picked Plaintiff up and took him outside to a "flat top" walkway. (Pl.'s Dep. 42-43.)

Defendant Beard met Plaintiff at the flat top walkway, officers removed the handcuffs, and Defendant Beard told Plaintiff to hit him. (Id. at 44.) Plaintiff refused and officers handcuffed him again. (Id. at 45.) Defendant Beard instructed five CERT officers to take Plaintiff, "up, down, up, down, and back up" on the elevator on the way to the medical department. (Id.) Plaintiff dropped to his knees on the elevator, and the CERT officers beat him while Defendant Butler controlled the elevator doors and ensured no one saw the beating. (Id. at 48, 50.) The elevator went up and down the two floors of the building five times, and on the last trip Plaintiff heard a noise when Defendant Nabors slapped him on the right side of his ear. (Id. at 49-53.)

Once off the elevator and in the medical department, a nurse examined Plaintiff and identified an injury to one hand and a hole in Plaintiff's right eardrum. (Id. at 56, 60.) When the nurse asked if anything else was wrong, Plaintiff began tearing up and refused to speak. (Id. at 56.) Defendant Butler then announced the examination was over, and Defendants Greenaway, Butler, Nabors, Binns and Washington took Plaintiff to lockdown. (Id.) The nurse did not say Plaintiff needed further treatment and did not say anything about ending the examination. (Id. at 58.) As a result of the perforated eardrum, Plaintiff suffered a permanent, forty percent loss of hearing in his right ear and wears a hearing aid. (Id. at 69-70.) The injury to Plaintiff's wrist healed within approximately one and a half weeks of the altercation. (Id. at 60-61.)

### B. Defendants' Version of Events

Plaintiff was known as a "habitual masturbator" with multiple prior incidents of exposing himself and masturbating in front of correctional officers. (McDowell Aff. ¶¶ 3-4.)

The incident at issue began when a female control room officer reported that Plaintiff was masturbating in front of her, and the Unit Manager asked Defendants Simpson and Perry to take Plaintiff from Building 14 to lockdown in Building 12. (Id. ¶¶ 5-9; Lawson Aff. ¶¶ 3-4.)

Defendants Simpson and Perry took Plaintiff into the hallway and were able to place one handcuff on him. (Simpson Aff. ¶ 6; Perry Aff. ¶ 6; McDowell Aff. ¶ 6.) Plaintiff complained it was too tight, and Defendant Perry explained he did not have a key but could loosen the cuff as soon as they made the short walk of thirty seconds to lockdown. (Simpson Aff. ¶ 6; Perry Aff. ¶ 6.) Unhappy with that response, Plaintiff turned around and started to fight by pushing Defendants Perry and Simpson, as well as hitting Defendant Simpson at least twice on the head and once with a closed fist on the bridge of the nose. (Simpson Aff. ¶¶ 7-8; Perry Aff. ¶ 7; McDowell Aff. ¶ 7.) Defendant Simpson received medical treatment in the form of several stitches in the back of his head, and he filed a disciplinary report against Plaintiff for hitting him with his fist in the back of the head. (Simpson Aff. ¶¶ 12-13 & Ex. A, DR # 429930.) Defendant Perry also filed an incident report against Plaintiff for "Inmate to Staff Assault." (Perry Aff. ¶ 10 & Ex. A.)

A call for assistance went out over the prison system, and CERT officers Greenaway, Nabors, Washington, Binns, Butler, and Williams responded. (Perry Aff. ¶ 9; Williams Aff. ¶¶ 3-4; Greenaway Aff. ¶¶ 3-4; Nabors Aff. ¶¶ 4-5; Beard Aff. ¶ 3.) The affidavits submitted by Defendants uniformly deny Plaintiff was hit, punched, slapped, or kicked, deny Defendant Beard ordered the elevator ride, and deny Plaintiff was ever put in an elevator. (Simpson Aff. ¶¶ 10-11; Perry Aff. ¶¶ 8-9; McDowell Aff. ¶ 12; Williams Aff. ¶¶ 5-8; Greenaway ¶ 8; Beard ¶¶ 8-9; Nabors ¶¶ 6-8.)

At medical, Plaintiff complained of pain in his right hand and ear. (Med. Rec. 101.) A physician's assistant examined Plaintiff, discovered he had a perforated right eardrum, requested an urgent ear consultation, prescribed Tylenol for pain, and educated Plaintiff on the treatment plan. (Id. at 101, 135.) The Use of Force Assessment notes that although Plaintiff was initially cooperative, he became aggressive, agitated, and upset as the examination progressed. (Id. at 101-02.) Plaintiff subsequently received a CT scan, hearing aid, and multiple examinations for his ear injury and hearing loss. (See, e.g., id. at 114, 130-49.)

ASMP prison officials conducted an investigation and did not find any wrongdoing by prison staff. (See Perry Aff., Ex. A.) The Department of Corrections determined Plaintiff's allegations of excessive force were unsubstantiated. (Doc. no. 64-2, IA Inv., pp. 14-15.) Defendants also submitted video footage from cameras in Building 14 in support of their motion and assert it "show[s] Plaintiff refusing to walk on his own, such that members of the CERT team had to try to carry him outside the building as he wriggled around and resisted. The video recordings do not show Plaintiff entering or exiting any elevators." (Doc. no. 64-15, Stm. Undisputed Mat. Facts, ¶¶ 10, 11.)

Defendant Clifford Brown was not at ASMP on October 24, 2013, as he worked the "A Leg" of the first shift, and the events alleged by Plaintiff occurred during the "B Leg" of the first shift. (Doc. no. 64-7, Brown Aff. ¶ 3.) The Internal Investigation File also confirms the Officer Brown involved in the events of October 24, 2013, was not Clifford Brown. (IA Inv., p. 47.)

III.    DISCUSSION

Defendants argue they are entitled to summary judgment because: (1) they never authorized or used excessive force against Plaintiff, (2) Defendant Butler did not deny

Plaintiff medical treatment, (3) Plaintiff is barred from recovering compensatory damages; and (4) all Defendants are entitled to qualified immunity. (See generally doc. no. 64.) As explained below, summary judgment is proper with respect to the medical claim. Material issues of fact preclude summary judgment on Plaintiff's excessive force claim except to the extent it arises out of the initial confrontation with Defendants Simpson and Perry.

##### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the

pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant Butler Is Entitled to Summary Judgment on the Medical Deliberate Indifference Claim.

Plaintiff's medical deliberate indifference claim is based on his contention Defendant Butler prevented the physician's assistant from providing medical care by interrupting the examination and taking Plaintiff to lockdown. (Doc. no. 35, p. 5.) To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det.

Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must show that person:  (1) was subjectively aware of a serious risk of harm, (2) disregarded that risk (3) by following a course of action which constituted "more than [gross] negligence."  Id. at 1326-27.

It is undisputed that Plaintiff was examined by a physician's assistant immediately after the alleged use of force.  (Med. Rec. 101-02.)  The examination revealed a perforated right eardrum, for which an urgent consultation was submitted.  (Id.)  Although Plaintiff became upset at the end of the examination, the physician's assistant wrote that Plaintiff was educated on the treatment plan and prescribed Tylenol for pain.  (Id.)  Moreover, Plaintiff (1) testified at his deposition his hand and wrist were examined, as well as his eardrum, (2) admits he said nothing when the physician's assistant asked him if he had any other complaints, (3) concedes there was no mention of needing further treatment when Defendant Butler said Plaintiff had to go back to lockdown, and (4) acknowledges he did not say that he needed additional treatment before leaving.  (Id.; Pl.'s Dep. 58-60.)  Plaintiff has received a CT scan, hearing aid, and multiple examinations for his decreased hearing after the October 24th altercation.  (See, e.g., Med. Rec. 114, 130-49.)  The injury to his wrist healed within approximately one and a half weeks of the altercation.  (Pl.'s Dep. 60-61.)

In sum, the record establishes summary judgment should be granted to Defendant Butler on the deliberate indifference claim because Plaintiff received an examination and treatment right after the use of force incident, and Plaintiff received continuing treatment thereafter for his loss of hearing, all without interference from Defendant Butler.

**C.     Defendant Brown Is Entitled to Summary Judgment on the Excessive Force Claim.**

It is undisputed that Defendant Clifford Brown worked the "A Leg" of the first shift on October 24, 2013, and the events alleged by Plaintiff occurred during the "B Leg" of the first shift.  (Brown Aff. ¶ 3; IA Inv., p. 47.)  Because Defendant Brown was not present for the events forming the basis of this lawsuit, summary judgment should be granted to him.

**D.     Defendants Are Entitled to Summary Judgment on One of Three Alleged Episodes of Excessive Force.**

As denominated by Defendants in their motion, there are three occasions of excessive force alleged by Plaintiff:  (1) the initial attempt to handcuff Plaintiff by Defendants Simpson and Perry; (2) the escort out of the dormitory building after the CERT team arrived and placed both handcuffs on Plaintiff; and (3) an elevator ride to the medical department.  Genuine disputes as to material facts remain only as to the second and third occasions.

### 1.     Overview of the Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates."  Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation.  Id.

*De minimis* uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind."  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the

peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need

and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6. For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

## 2. Initial Attempt to Handcuff Plaintiff

Defendants Perry and Simpson are entitled to summary judgment on the first claim of excessive force concerning their attempts to handcuff Plaintiff prior to moving him from Building 14 to lockdown in Building 12. There is no dispute Plaintiff was directed to produce his hands to be handcuffed for the move. (Pl.'s Dep. 28.) Plaintiff offered up his first hand, but became upset because he thought the cuff had been placed too tightly. (Id. at 29; Simpson Aff. ¶ 6; Perry Aff. ¶ 6.) Plaintiff rejected the explanation that his cuffs would be loosened as soon as he made the short, thirty-second trip to segregation, refused to give up his second hand, and started fighting with these two Defendants. (Pl.'s Dep. 29, 32; Simpson Aff. ¶¶ 7-8; Perry Aff. ¶ 7, McDowell Aff. ¶ 7.) Defendant Simpson had to have stitches in his head after the altercation. (Simpson Aff. ¶ 12.)

The law is well-settled that prison officials are entitled to wide-ranging deference when acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6.

Likewise, force may be used to compel compliance with a valid order. Brown, 813 F.2d at 1187. Defendants Perry and Simpson gave Plaintiff a valid order to be handcuffed for the move to a different building. Plaintiff concedes he refused to comply because he thought the first cuff was too tight. Even if the Court presumes the first cuff was placed too tightly, the Eleventh Circuit has determined being handcuffed too tightly for twenty minutes cannot form the basis for an excessive force claim. Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997). The time period here was significantly shorter. Thus, the initial action of cuffing Plaintiff too tightly, even if intentional, cannot support an excessive force claim.

Once Plaintiff refused to be handcuffed and actively began resisting Defendants Perry and Simpson, wide ranging deference must be given to the choices made to preserve discipline and security. Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (explaining force, even when resulting in broken bones, may be authorized to quell prisoner disturbance and restore order); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (concluding that when prisoner created disturbance by refusing to follow guard instruction, it was not unreasonable to grab prisoner by throat and push him again prison bars). The Unit Manager has attested she never saw either Defendant Simpson Perry hit Plaintiff or act violently toward him. (McDowell Aff. ¶ 12.) But even giving deference to Plaintiff's testimony that Defendant Perry put him a chokehold and Defendant Simpson hit him while trying to get the second handcuff in place, summary judgment is still appropriate.

Plaintiff claims the chokehold lasted only briefly until the CERT team started arriving and he allowed himself to be cuffed. (Pl.'s Dep. 30-32.) Courts have approved the use of chokeholds to gain control of resistant prisoners. Ladd v. Barton, No. 12-0107, 2012 WL 4324406, at *5-6 (S.D. Ala. Aug. 28, 2012) (approving use of initial chokehold to gain initial

control of prisoner creating disturbance and then second chokehold applied while prisoner dragged down hallway, away from disturbance), *adopted by*, 2012 WL 4322084 (S.D. Ala. Sept. 9, 2012). In fact, Eleventh Circuit precedent holds that a fatal chokehold applied to a prisoner by prison officials to protect their safety, and applied in a good faith effort to maintain order, is not a constitutional violation. Williams v. Kelley, 624 F.2d 695, 698 (5th Cir. 1980). [2] Moreover, a prison guard "need not wait until disturbances reach dangerous proportions before responding." Bennett, 898 F.2d at 1533.

Here, Plaintiff claims no injury from the alleged chokehold by Defendant Perry or hits from Defendant Simpson, and admits he continued to resist by grabbing Defendant Simpson while in the chokehold. (Pl.'s Dep. 31.) Because Plaintiff admits to fighting with these two Defendants after they gave the order to cuff up, there was a reasonably perceived threat requiring an application of some force. See Hudson, 503 U.S. at 7.

In sum, the force applied by Defendants Simpson and Perry while trying to get an actively-resisting Plaintiff handcuffed is not repugnant to the conscience of mankind and was applied in a good faith effort to restore discipline. See Hudson, 503 U.S. at 7, 9. No reasonable juror could find otherwise under the undisputed facts and Plaintiff's version of the disputed facts. Therefore, summary judgment is appropriate as to the first occasion of excessive force alleged by Plaintiff.

### 3.    Escort from Building 14 to Medical Department

Summary judgment is not appropriate as to the allegations of excessive force after Plaintiff was handcuffed. Plaintiff testified that once he saw the other officers running to the scene, he stopped struggling, put his hands behind his back, and allowed handcuffs on both

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

hands.  (Pl.'s Dep. 32-33.)  Defendant Greenaway attests that when he responded to the code for assistance, Plaintiff was face down on the ground and handcuffed behind his back. (Greenaway Aff. ¶ 4.)  Defendant Williams also attests Plaintiff was under control and handcuffed.  (Williams Aff. ¶ 4.)  Plaintiff maintains that after he had been handcuffed, Defendants punched him, grabbed him, and threw him through a doorway.  (Pl.'s Dep. 33, 35-40.)  He also claims he was beaten in the elevator on his way to the medical department, at Defendant Beard's direction, while he was still handcuffed and on his knees.  (Id. at 48, 50.)

Because the use of force on a restrained and compliant inmate constitutes a violation of the Eighth Amendment, summary judgment as to these two alleged occasions of excessive force is inappropriate.  See, e.g., Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991) (explaining "any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation"); Ort, 813 F.2d at 324-25 (explaining "distinction, for purposes of applying the eighth amendment in the context of prison discipline, between punishment after the fact and immediate coercive measures necessary to restore order or security").

### 4.    The Videos Do Not Provide a Basis for Summary Judgment.

Citing Vicks v. Knight, 380  F. App'x 847, 852 (11th Cir. 2010), Defendants argue they are entitled to summary judgment despite the conflicting testimony because the video footage sufficiently corroborates their version such that no factfinder could reasonably believe Plaintiff's version.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  However, "even where the entire

series of events is recorded, video evidence is not obviously contradictory if it fails to convey spoken words or tone, or fails to provide an unobstructed view of the events." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011); see also Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315-16 & n.2 (11th Cir. 2010) (declining to rely on video evidence to entirely discredit Plaintiff's version of events because of lack of sound and periodic obstruction of visual depiction).

The problem for Defendants is that the four videos provide only an unhelpful snapshot of what happened in Building 14 after the call for assistance issued. (Doc. no. 65, Videos #1-4.) The videos do not contain any footage of the initial handcuffing and altercation between Plaintiff and Defendants Simpson and Perry. Nor do they provide footage of any events occurring after Plaintiff exited Building 14, during the escorted walk to the medical unit. Even the footage inside Building 14 is unhelpful because there are no location markers or personal identifiers, and the camera view of Plaintiff is often obscured by a wall of officers observing whatever is happening to Plaintiff. Nothing in the videos explains why Plaintiff suffered a perforated eardrum and lost forty percent of the hearing in one ear.

For example, in Video #2 a convergence of uniformed officers surround Plaintiff, who is barely visible on the ground in a white jumpsuit. There is no clear depiction of what is going on inside the circle of officers. The video does depict the officers then carrying Plaintiff outside like a sack of potatoes, with his face near the ground and his hands behind him. One cannot discern whether Plaintiff is conscious in some of the frames of him being carried. There is also no indication where the walkway leads or how long it took Plaintiff to arrive at the medical department.

Defendants concede the videos do not show the entirety of Plaintiff's escort to medical because of camera placement. (Doc. no. 64-14, p. 17 n. 5.) Yet they appear to ask the Court to extrapolate what happened during the entirety of the escort because, "the portions of the escort to medical that are available clearly do not fit Plaintiff's version of what happened." (Id.) The Court declines the invitation. The Court cannot weigh credibility at the summary judgment stage. Based on the poor quality of the video footage, the Court concludes the use of force is not obviously contradictory to Plaintiff's account, nor is it fully supportive of Defendants' contentions.

5. **The Court Rejects Defendants' Ancillary Arguments that Plaintiff Suffered Only *De Minimis* Injury, Plaintiff Cannot Prove Which Officer Landed Each Blow, and the Department of Corrections Investigation Insulates Them from Liability.**

A "perforated eardrum cannot be characterized as a *de minimis* injury." Grimes v. Felder, No. 2:13-cv-01267, 2015 WL 8294653, at *5 (N.D. Ala. Oct. 30, 2015), *adopted by* 2015 WL 8136567 (N.D. Ala. Dec. 8, 2015). While the absence of visible injury to Plaintiff's body may pose problems for Plaintiff at trial when he claims he sustained two beatings at the hands of multiple correctional officers, it is inadequate to justify a wholesale rejection of Plaintiff's testimony concerning the hallway and elevator encounters.

Defendants also fail in their attempts to parse exactly which Defendant inflicted which blow, served as a look out, or was present throughout the entirety of each alleged beating. This is because any "officer who is present at the scene and who fails to take reasonable steps to protect the victim from another officer's use of excessive force, can be held liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). Thus, there is no support for "the argument that the force administered by each defendant in this collective beating must be analyzed separately to determine which of the defendants'

18

blows, if any, used excessive force." Id.  While the undisputed facts show that Defendants Simpson and Perry were not present in the elevator, they should remain as defendants because of their presence in the hallway after Plaintiff was handcuffed.  Likewise, Defendant Beard is not alleged to have been involved in the altercation in the hallway, but there is a dispute as to his role in ordering the alleged beating on the elevator.

The Court also rejects Defendants' suggestion that Plaintiff must show through medical experts that Defendant Nabors, the person Plaintiff alleges was the last to slap him in the elevator before he heard a "noise" in his ear, caused Plaintiff's perforated eardrum.  (Doc. no. 64-14, p. 20.)  As explained supra, the Court need not separately analyze each blow. Skrtich, 280 F.3d at 1302.  The case cited by Defendants is inapposite because the question was whether a prisoner's fatal aneurysm resulted from natural causes or trauma inflicted by the defendants.  Wingster v. Head, 318 F. App'x 809, 815 (11th Cir. 2009).  Here, a reasonable juror could conclude from Plaintiff's testimony that the perforated eardrum occurred as a direct result of the alleged beating.  Neither the record nor common sense suggests that an eardrum perforation would occur naturally and simultaneously with an alleged beating.

Finally, whether Department of Corrections officials determined Plaintiff's allegations were unsubstantiated is not dispositive.  There is no evidence as to the standard by which such internal investigations are judged, let alone that the standard is the same as applies in a § 1983 case brought in federal court.  Even if the standards were identical, Defendants cite no authority suggesting the investigatory findings form a sufficient legal basis for claim or issue preclusion.

**E. Qualified Immunity Does Not Apply, and the Type of Damages Sought Is Not Dispositive.**

Defendants argue they are entitled to qualified immunity. (Doc. no. 64-14, pp. 23-24.) However, a qualified immunity defense is not available on the excessive force claims. Skrtich, 280 F.3d at 1302. Use of excessive force is clearly established to be a violation of the Constitution. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319. Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301-02. The Court need not address the qualified immunity argument as to the medical deliberate indifference claim because, as discussed above, Defendant Butler is entitled to summary judgment on the merits of that claim.

Defendants also argue that Plaintiff has claimed only compensatory damages and punitive damages, and even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), ("PLRA"), because his injuries are *de minimis*. (Doc. no. 64-14, pp. 20-21.) With one conclusory sentence, Defendants then dismiss the notion Plaintiff seeks nominal damages. (Id. at 21.)

Section § 1997e(e) provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Thus, the PLRA prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). To survive

application of the § 1997e(e) bar, the physical injury must be more than *de minimis*. Id. at 1213. "The meaning of the phrase 'greater than de minimis,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).

Here, Plaintiff alleges more than mental or emotional injury. He has claimed actual physical injury. As aptly explained by another court, "Plaintiff is also seeking damages for the *actual* physical injuries he received from the alleged excessive use of force. This Court can find no authority limiting a prisoner's damages for the *actual* physical injury he may have suffered, even if the court determines that the injury was *de minimis*." Nix v. Carter, No. 5:10-cv-256, 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013). Moreover, as explained above, for purposes of summary judgment, the Court does not consider a perforated eardrum causing a forty percent loss of hearing a *de minimis* injury. Grimes, 2015 WL 8294653, at *5. The Court rejects Defendants' argument that the eardrum injury is relevant only if Plaintiff presents medical evidence that a particular Defendant administered the blow that caused the perforated eardrum. See Skrtich, 280 F.3d at 1302.

As to nominal damages, a failure to expressly request them is not necessarily fatal to awarding such damages, even if a prisoner plaintiff is unable to establish actual injury for compensatory damages. Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) (remanding to trial court for consideration of whether prisoner plaintiff could recover nominal damages, citing Fed. R. Civ. P. 54(d), despite failure to request that relief). Thus, the Court rejects Defendants' argument that the type of damages expressly requested by Plaintiff is dispositive of the case, and summary judgment on this basis should not be entered.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. no. 64.)   In particular, summary judgment should be granted as to the deliberate indifference claim, the excessive force claim against Defendant Clifford Brown, and the excessive force claim against Defendants Simpson and Perry as it relates to their initial confrontation prior to the point of Plaintiff being handcuffed with both hands.  The case should proceed to trial on the excessive force claim as it relates the allegations of excessive force after the handcuffing, both inside Building 14 and the elevator.

SO REPORTED and RECOMMENDED this 2nd day of August, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA